## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **VALERIE TALLEY MILLER,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No.: 7:18-cv-1565-ACA** |
| | ] | |
| **ANDREW SAUL, Commissioner of** | ] | |
| **Social Security,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Valerie Talley Miller brings this action pursuant to § 205(g) of the Social Security Act, seeking review of the Social Security Administration Commissioner's (the "Commissioner") final decision. *See* 42 U.S.C. § 405(g). Based on the court's review of the administrative record and the parties' briefs, the court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that substantial evidence supports her decision, which has become the decision of the Commissioner. As a result, the court **WILL AFFIRM** the decision denying benefits.

## I. PROCEDURAL HISTORY

Ms. Miller applied for a period of disability and disability insurance benefits on February 16, 2011. (R. at 264–65). The Social Security Administration (the

"SSA") found Ms. Miller disabled as defined by the Act beginning on February 11, 2011, and awarded Ms. Miller disability benefits. (*Id.* at 68–73).

In 2016, the SSA conducted a continuing disability review to determine whether Ms. Miller had experienced medical improvement. (R. at 152–53). The SSA determined that medical improvement had occurred and that Ms. Miller's disability ended on December 17, 2014. (*Id.*). Ms. Miller requested a hearing before an ALJ, who in 2017 determined that Ms. Miller's disability had, in fact, ceased on December 17, 2014, and that Ms. Miller was not disabled as of August 31, 2016. (*Id.* at 18–30). Ms. Miller then sought review by the Appeals Council, which denied Ms. Miller's request for review. (*Id.* at 1). The Appeals Council's denial of review makes the ALJ's decision the final decision of the Commissioner, and the decision is ripe for the court's judicial review. *See* 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks and citation omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there is 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Henry v. Comm'r of Soc. Sec.*, 802

F.3d 1264, 1267 (11th Cir. 2015) (quoting *Winschel*, 631 F.3d at 1178).  The court

may not "decide the facts anew, reweigh the evidence," or substitute its judgment

for that of the ALJ.  *Winschel*, 631 F.3d at 1178 (quotation marks and citation

omitted).  The court must affirm "[e]ven if the evidence preponderates against the

Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–

59 (11th Cir. 2004) (quotation marks and citation omitted).

Despite the deferential standard for review of claims, the court must

"scrutinize the record as a whole to determine if the decision reached is reasonable

and supported by substantial evidence."  *Henry*, 802 F.3d at 1267 (quoting

*MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).  The court must

reverse the Commissioner's decision if the ALJ does not apply the correct legal

standards.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.   THE ALJ'S DECISIONS

The ALJ's 2012 decision granting a period of disability and disability

insurance benefits found that Ms. Miller had two severe medically determinable

impairments: seizure disorder and "status post 1995 viral encephalitis with residual

short-term memory loss."  (R. at 70).  Given these impairments and their effect on

her residual functional capacity, the ALJ found that Ms. Miller was unable to

perform her past relevant work or any other work existing in significant numbers in

the national economy.  (*Id.* at 71–72).

In 2017, another ALJ determined that Ms. Miller's disability had ended. To make that determination, an ALJ must follow an eight-step sequential evaluation process considering:

> (1) whether the claimant is engaging in substantial gainful activity; (2) if not, whether the claimant has an impairment or combination of impairments that meet or equal a listed impairment; (3) if not, whether there has been medical improvement; (4) if so, whether the improvement is related to the claimant's ability to work; (5) if there is no medical improvement or if medical improvement is not related to the claimant's ability to work, whether an exception to medical improvement applies; (6) if there is medical improvement related to the claimant's ability to work or if an exception applies, whether the claimant has a severe impairment; (7) if so, whether the claimant can perform his past relevant work; and (8) if not, whether the claimant can perform other work.

20 C.F.R. § 404.1594(f)(1)–(8).

The ALJ determined that Ms. Miller's disability had ended as of August 31, 2016. (R. at 30). First, the ALJ found that she had not engaged in substantial gainful activity since the date her disability ended. (*Id.* at 20). Next, the ALJ found that Ms. Miller still has the same two severe medically determinable impairments as in 2012 (seizure disorder and "status post viral encephalitis in 1995 with residual short-term memory loss"), as well as a severe medically determinable impairment in the form of obesity. (*Id.*). The ALJ also found that Ms. Miller has non-severe medically determinable impairments in the form of abdominal pain, sinusitis, and "status post bariatric surgery." (*Id.*). The ALJ concluded that these impairments did not meet or

4

medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21).

At step three, the ALJ determined that Ms. Miller had experienced medical improvement as of August 31, 2016 because her seizures had been well controlled on medication and her records revealed that she had not complained of memory problems for years. (R. at 23). At step four, the ALJ found that Ms. Miller's medical improvement related to her ability to work because it resulted in an increase in her residual functional capacity. (*Id.* at 24). Specifically, the ALJ found that Ms. Miller had the residual functional capacity to perform medium work except that she

> can stand/walk six hours in an eight-hour day; can sit six hours in an eight-hour day; can lift/carry fifty pounds occasionally and twenty-five pounds frequently; can frequently climb ramps and stairs; can never climb ladders, ropes and scaffolding; can frequently balance on uneven terrain; can frequently kneel, crouch, and crawl; can occasionally be exposed to vibration; can never work around hazardous machinery or work at unprotected heights; can understand, remember, and apply simple instructions; can maintain attention and concentration for a two hour time period in order to complete an eight-hour workday; can maintain occasional interaction with coworkers and the general public; and can adapt to changes in the workplace that are introduced gradually and infrequently.

(*Id.*).

Because the ALJ found that Ms. Miller's medical improvement is related to her ability to work, she skipped step five and found at step six that Ms. Miller continued to have a severe impairment or combination of impairments. (*Id.*). At step seven, the ALJ found that Ms. Miller could not perform her past relevant work,

5

but at step eight, she found that Ms. Miller could perform other work existing in the national economy, including cardboard box maker, dishwasher, and dry cleaner helper. (*Id.* at 28–29). Accordingly, the ALJ determined that Ms. Miller's disability had ended as of August 31, 2016. (*Id.* at 30).

## IV. DISCUSSION

Ms. Miller argues that the court should reverse the Commissioner's decision because the evidence presented in the 2016 proceeding is "virtually identical" to the evidence supporting the 2012 finding of disability. (Doc. 14 at 12–15). She takes issue with the ALJ's assignment of weight to opinions by Dr. Sharon Waltz and Dr. John Goff, as well as the ALJ's reliance on Ms. Miller's testimony about her daily activities.[1] (*Id.*).

Substantial evidence supports the ALJ's determination that Ms. Miller's disability ceased in August 2016. Ms. Miller's medical records show that, after the disability determination in 2012, she has for years denied memory problems to her medical providers. (*See* R. at 387, 401, 406, 415, 424). In addition, a consultative mental examination report performed by Dr. Sharon Waltz in 2016 found that Ms. Miller was not suffering any significant memory problems:

---

[1] Ms. Miller expressly concedes that the other severe impairments listed by the ALJ (her seizure disorder and her obesity) "result in minimal, if any, effect on her residual functional capacity." (Doc. 14 at 6). The court therefore only addresses Ms. Miller's short term memory loss.

Ms. Miller was able to recall 3 of 3 objects upon immediate recall. She was able to recall 3 of 3 objects after five minutes. She was able to recite 6 digits forward and 4 digits backward. Ms. Miller was able to describe her activities on the day of the examination and the previous day in sufficient detail. She was mostly able to recall previous dates/events from her life history. She reported short-term memory problems, such as viral encephalitis as a child.

(*Id.* at 421).

Ms. Miller challenges Dr. Waltz's opinion based on Dr. Waltz's statement that "Ms. Miller is able to function primarily independently with assistance." (Doc. 14 at 12–13; *see* R. at 422). Ms. Miller contends that "[t]here is no such thing as functioning independently with assistance" (doc. 14 at 13), but the court notes that Dr. Waltz's actual statement was that Ms. Miller can function "*primarily independently with assistance*" (r. at 422). In any event, the ALJ gave Dr. Waltz's opinion only "some weight" because Dr. Waltz opined that Ms. Miller was only mildly impaired, but "the totality of the evidence . . . overall supports moderate limitations." (*Id.* at 26). In other words, the ALJ discounted Dr. Waltz's opinion somewhat because Dr. Waltz underestimated Ms. Miller's limitations.

Next, Ms. Miller challenges the weight the ALJ assigned to Dr. Goff's opinion. Dr. Goff, a clinical neuropsychiatrist, performed consultative evaluations of Ms. Miller in 2012, at which time he diagnosed her with "organic amnestic disorder," and 2017, at which time he found that she has "very considerable difficulties with memory to such an extent that it affects her day to day life

7

substantially." (R. at 368–74, 460–66). The ALJ in the 2012 proceeding gave Dr. Goff's opinion "greater weight" than he gave the opinion of an unidentified reviewing psychologist. (*Id.* at 71; *see* Doc. 14 at 12). By contrast, the ALJ in this proceeding gave "Dr. Goff's opinions only some weight because they are not consistent with the totality of the evidence, including the claimant's reported daily activities" and the results of the psychometric testing he had administered. (R. at 27).

To the extent that Ms. Miller contends the later ALJ was bound by the weight assignments given by the earlier ALJ, the Eleventh Circuit has stated that "[f]aced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015). Putting aside the fact that the later ALJ was not faced with the same record, but with a record containing five additional years of medical records and a second opinion by Dr. Goff, the court cannot find a lack of substantial evidence based solely on the later ALJ's different assignment of weight to Dr. Goff's opinion.

To the extent that Ms. Miller contends that substantial evidence does not support the ALJ's credibility determination, an ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*,

631 F.3d at 1179. "[T]he ALJ is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (emphasis added); *see also* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Here, the ALJ stated with particularity the weight she gave Dr. Goff's opinion. The medical evidence in the record substantially supports her determination. As discussed above, Ms. Miller's medical records show that she has repeatedly denied memory problems since 2012. (R. at 387, 401, 406, 415, 424). In addition, despite Dr. Goff's test results showing average to low-average scores for Ms. Miller's memory, he reported that she had a "very significant specific memory problem." (*See id.* at 460–66). Finally, in contrast to Dr. Goff's opinion that Ms. Miller's memory problem "continues to be a substantial impediment to her and interferes with her daily life to the extent that in some cases she needs supervision" (r. at 465), she testified that she can drive without a problem as long as she uses a GPS, take care of her three-year-old daughter all day, and remember music well enough to perform in the church choir (*id.* at 44–48). These articulated reasons together with the record evidence suffice to constitute substantial evidence in support of the ALJ's assignment of weight to Dr. Goff's opinion. *See Phillips v. Barnhart*, 357 F.3d 1232,

1240 n.8 (11th Cir. 2004) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

Finally, Ms. Miller contends that the ALJ could not rely on Ms. Miller's testimony about her daily activities to find that she was not disabled. (Doc. 14 at 13–15). In support of this argument, Ms. Miller cites to the Eleventh Circuit's decision in *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). In *Lewis*, the ALJ discredited the opinion of the claimant's treating physician in large part because the claimant had stated that he "participate[d] in certain activities, such as housework and fishing." 125 F.3d at 1441. The Eleventh Circuit held that "participation in everyday activities of short duration, such as housework or fishing, [does not] disqualif[y] a claimant from disability." *Id.*

The *Lewis* decision is inapposite because the ALJ here articulated other reasons for her assignment of weight to Dr. Goff's opinion, including the medical records showing that Ms. Miller had denied memory problems in the years after her disability determination and that Dr. Goff's opinion was not consistent with the results of the testing he had administered on Ms. Miller. (*See* R. at 27). Substantial evidence supports the ALJ's decision that Ms. Miller's disability ceased in August 2016. Accordingly, the court **WILL AFFIRM** the Commissioner's final decision.

## V.    CONCLUSION

The court **WILL AFFIRM** the Commissioner's final decision.  The court will

enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 20, 2019.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE